### State of Connecticut *v.* David Sanchez
### (12225)

Peters, C. J., Healey, Dannehy, Santaniello and Callahan, Js.

Argued April 29—decision released August 5, 1986

*Kevin C. Connors,* special public defender, with whom, on the brief, was *Michael J. Whelton,* special public defender, for the appellant (defendant).

*Steven M. Sellers,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Herbert Appleton,* assistant state's attorney, for the appellee (state).

Callahan, J. After a jury trial, the defendant, David Sanchez, a/k/a Cecilio DeLeon, was convicted of felony murder in violation of General Statutes §§ 53a-54c and

53a-54a (c).[1] He was sentenced to a term of imprisonment of not less than twenty-five years to life. On appeal, he claims that the trial court erred in: (1) excluding the hearsay confession of a third party; and (2) denying the defendant's motion to open his case after the close of evidence but prior to closing arguments. We find no error.

[1] "[General Statutes] Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

"[General Statutes (Rev. to 1979)] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony unless it is a capital felony and the death penalty is imposed as provided by section 53a-46a."

The jury could reasonably have found that on December 23, 1980, at about 5:30 p.m. two hispanic males entered Jack's Pharmacy at 714 Albany Avenue in Hartford. The co-owners of the pharmacy, Joseph Gartrell and Robert Gentry, as well as an employee, Ruby McKnight, were working in the pharmacy that evening. No customers were in the pharmacy. Upon entering the pharmacy, the two men proceeded to the cooler, removed an eight-pack of beer, and placed it on the sales counter, behind which Gartrell, Gentry and McKnight were standing. One of the men then inquired as to the price of the beer, whereupon he took a ten dollar bill out of his wallet and placed it on the counter. McKnight opened the cash register to get change at which time the same man placed the barrel of a gun on the cash register, and told McKnight to "leave it as is." McKnight complied with the man's demand for her to lie face down on the floor behind the counter. Gentry and Gartrell remained standing. Gentry then said something in Spanish to one of the men, at which time the man fired a handgun at Gentry, fatally wounding him. McKnight later identified the defendant in a photo array as the person who shot Gentry. Gartrell also identified the defendant in a corporeal lineup as the person who shot Gentry. Other facts will be discussed as they become relevant to the specific claims raised.

I

The defendant's first claim is that the trial court erred in excluding the hearsay confession of a third party. The defendant attempted to introduce a statement made out of court by a third party, one Jovino Solar. The statement was sought to be introduced through Maria Navarro, who had previously testified that the defendant had been with her on the night of the robbery and murder.

In the absence of the jury, the defendant offered Navarro's testimony concerning the statement allegedly made by Solar, viz., that he had committed the robbery and murder at Jack's Pharmacy on December 23, 1980. Navarro, who had lived with the defendant for eight years at the time of the trial, testified that on December 23, 1980, she was with the defendant in their apartment all day until late that evening, when Solar's brother visited them. She further testified that the three then left her apartment and went to an apartment where they met Solar. Navarro testified that Solar at that time told her that he had robbed and "killed the guy" at Jack's Pharmacy. According to Navarro's testimony, Solar told her that he had entered the pharmacy at about 5 p.m. and said, "Don't move, anybody," whereupon the owner of the pharmacy "fired the gun three times." In response, Solar claimed he fired his gun three times "because he got upset." The defendant's counsel argued that, although this statement constituted hearsay, it should be admitted as a declaration against penal interest, an exception to the hearsay rule. The trial court refused to admit the statement.

In *State* v. *DeFreitas,* 179 Conn. 431, 426 A.2d 799 (1980), we held that third party statements against penal interest exculpatory to a defendant were no longer per se inadmissible. See also *State* v. *Frye,* 182 Conn. 476, 479, 438 A.2d 735 (1980); *State* v. *Gold,* 180 Conn. 619, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980). The rule we adopted in *DeFreitas* is consistent with the United States Supreme Court decision in *Chambers* v. *Mississippi,* 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973), and is also in accord with rule 804 (b) (3) of the Federal Rules of Evidence providing that trustworthy third party statements against penal interest exculpatory to a defendant are admissible if the declarant is

unavailable. "Courts have extracted from *Chambers* four general considerations relevant to an investigation of the trustworthiness of a third party confession: '(1) the time of the declaration and the party to whom the declaration was made; (2) the existence of corroborating evidence in the case; (3) the extent to which the declaration is really against the declarant's penal interest; [and] (4) the availability of the declarant as a witness.' " *State* v. *Frye,* supra, 479. No single factor in the test for determining trustworthiness is necessarily conclusive; *State* v. *Gold,* supra, 633–34; the factors are reflective of the fact that there can be " 'no precise formulation of the proof which would constitute sufficient evidence of the trustworthiness' " of such declarations. *State* v. *Frye,* supra, 480.

In our review of a trial court's ruling on the admissibility of the third party confession, the determination as to whether the third party declaration against penal interest is trustworthy is left to the sound discretion of the trial court. *State* v. *DeFreitas,* supra. In this case, the trial court excluded the proffered testimony on the ground that "the corroborating circumstances clearly indicate[d] that the alleged statement was untrustworthy." The unavailability of the declarant was established, and it is undisputed that the alleged statement was against the declarant's penal interest. Therefore, we will examine only the evidence concerning the time of the declaration, the party to whom it was made, and the evidence corroborating the statement. See *State* v. *DeFreitas,* supra, 449.

The defendant first argues that Solar's statement was made at a time and to a person that would tend to indicate trustworthiness. We disagree. Although the statement was allegedly made only hours after the crimes occurred; see *State* v. *Gold,* supra, 634; cf. *United States* v. *Satterfield,* 572 F.2d 687 (9th Cir.), cert. denied, 439 U.S. 840, 99 S. Ct. 128, 58 L. Ed. 2d

138 (1978) (confession made two years after crime); the record does not support the claim that it was made to a person which would indicate that it was trustworthy. Navarro testified that Solar had lived in an apartment above her and the defendant and that she had known him for "maybe one month." The remainder of Navarro's testimony concerned Solar's request that Navarro and Sanchez assist him in leaving Hartford and the fact that Solar had spent the night at their apartment following the killing of Gentry. None of this testimony, however, was corroborated by independent evidence. We conclude, as did the trial court, that there was no close, confidential relationship between the declarant and the witness that would indicate the trustworthiness of the alleged declaration by Solar. See *State v. Gold,* supra, 634; cf. *Lowery v. State,* 401 F. Sup. 604 (D. Md. 1975), aff'd without opinion, 532 F.2d 750 (4th Cir.), cert. denied, 429 U.S. 919, 97 S. Ct. 312, 50 L. Ed. 2d 285 (1976) (affidavit sworn to before prison official). Additionally, the untrustworthiness of Navarro's testimony was colored by her intimate relationship with the defendant with whom she had lived for eight years preceding the robbery and murder at Jack's Pharmacy. Cf. *State v. Gold,* supra, 634–35, 638; *People v. Craven,* 54 Ill. 2d 419, 429, 299 N.E.2d 1 (1973).

We now turn to the second factor, the corroboration of the statement. Unlike the situation in *State v. Gold,* supra, 634, where "a myriad of corroborating circumstances were present" to indicate reliability, here the record reveals few, if any, corroborating circumstances. The declarant in this case was not placed in the vicinity of the crime by another witness. Therefore, there was no independent evidence that Solar had an opportunity to commit the murder. Cf. *State v. Gold,* supra, 634–35. Moreover, the alleged statement by Solar was in direct conflict with the testimony of the two eyewit-

nesses to the robbery and murder of Gentry. According to Navarro, Solar said that he had entered the pharmacy and said, "Don't move, anybody," whereupon the owner of the pharmacy "fired the gun three times." Both eyewitnesses testified that only one shot had been fired by the defendant. In addition, the police only found one spent bullet during their investigation at the pharmacy. Finally, there were discrepancies between Navarro's testimony concerning Solar's appearance at the time of the robbery and the eyewitness descriptions of the robbers. Navarro testified that Solar had a beard, mustache, and sideburns. The eyewitnesses testified that one of the robbers, later identified by them as the defendant, had only a "thin mustache" and that his younger accomplice was "clean shaven." Navarro's account of Solar's confession made no reference to any accomplice in the crimes. We conclude that the trial court did not abuse its discretion when it excluded Navarro's rendition of Solar's alleged statement in the absence of any corroborating circumstances to indicate that it was trustworthy.

## II

The defendant next claims that the trial court erred in denying his motion to open his case for the purpose of calling an additional alibi witness, Hector Rodriguez. Specifically, he challenges the trial court's ruling on four grounds: (1) he was in compliance with the applicable Practice Book sections; (2) the trial court improperly relied upon the "stipulation" of the defendant that Rodriguez would not be called as a witness; (3) the trial court's ruling denied him due process of law under the fifth, sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution; and (4) the trial court abused its discretion in denying the motion to open. We disagree

and find that, under the circumstances of this case, the trial court acted properly in excluding the alibi testimony.

As we recently stated in *State* v. *Boucino,* 199 Conn. 207, 209, 506 A.2d 125 (1986), "our state's notice of alibi discovery rules are similar in scope and wording to those used in the federal system and most states. See Fed. R. Crim. Proc., rule 12.1; see generally LaFave & Israel, Criminal Procedure (1985) § 19.4 (b)." Practice Book § 763 provides that "[u]pon written demand filed by the prosecuting authority . . . the defendant shall file within ten days, or at such other time as the judicial authority may direct, a written notice of his intention to offer a defense of alibi." Pursuant to § 763 the notice must state "the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi." Once this notice is filed by the defendant, the state "within ten days after filing of the notice, but in no event less than ten days before the trial unless the judicial authority otherwise directs, shall file a written notice stating the names and addresses of the witnesses upon whom the state intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied upon to rebut testimony of any of the defendant's alibi witnesses." Practice Book § 764. Upon failure of the defendant or the state to comply with these provisions, the trial court "may exclude the testimony of any undisclosed witness . . . ." Practice Book § 766.[2] "For good cause shown, the judicial

---

[2] "[Practice Book] Sec. 766. —— ——FAILURE TO COMPLY

"Upon the failure of either party to comply with the requirements of Sec. 762, the judicial authority may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at the scene of the alleged offense. Sec. 762 shall not limit the right of the defendant to testify in his own behalf."

authority may grant an exception to any of the require-
ments of [§§] 763 through 766." Practice Book § 767;
*State* v. *Boucino,* supra, 210.

On July 15, 1982, the state filed a demand for notice
of alibi pursuant to Practice Book § 763. The defend-
ant filed a notice of alibi defense on July 19, 1982, nam-
ing only Maria Navarro as an alibi witness. Pursuant
to Practice Book § 764, the state filed a notice stating
the names and addresses of the witnesses it would call
to establish the defendant's presence at the scene of
the alleged offense. After both the state and the defend-
ant had rested their respective cases, the defendant
moved to open his case to permit Rodriguez to testify
as an alibi witness.

The trial court conducted a thorough examination of
the defendant and his counsel to determine the merits
of the defendant's motion. The court asked why
Rodriguez' name had not been included in the original
notice of alibi. The trial court also noted that defense
counsel had "stipulated" earlier in the trial that
Rodriguez would not be called as a witness.[3] Defense
counsel indicated that he had "no idea" that Rodriguez
could offer alibi testimony, and that the defendant had
never mentioned that such testimony was available. The
trial court then tried to ascertain whether the defend-
ant had known of the potential alibi testimony prior

---

[3] "Mr. Connor: I could put on the record at this time there is one wit-
ness that we are unable to locate. And it turns out my client does not want
him called anyway. I can put that on the record.
 "The Court: Who is that?
 "Mr. Connor: Hector Rodriguez. I had indicated at one time we might
call a Hector Rodriguez, your Honor. We have been unable to locate him.
And I have gone over this with Mr. Sanchez this morning with the aid of
our investigator who speaks Spanish, Mr. Arnaldo Nieves. And Mr. Sanchez
has indicated to me that he doesn't want him called anyway. So I wouldn't
ask for a continuance to try to locate him. Is that correct, Mr. Sanchez?
 "The Court: Mr. Sanchez, is that a correct statement just made by Mr.
Connor?
 "The Defendant: Yes."

to the filing of his motion to open. The defendant responded that he "knew [all the time] about it."[4] According to the defendant, however, he had not told his attorney about Rodriguez' alibi testimony until that day. The defendant claimed that Rodriguez was selling drugs for him outside his apartment on the evening of the alleged crimes, and he had not wanted to reveal such drug involvement in his trial for murder.

The trial court stated that the defendant's failure to make a timely disclosure of a proffered alibi witness permitted exclusion of the testimony under Practice Book § 766. The court added, however, that Practice Book § 767 indicates that for good cause shown, the judicial authority may grant an exception to the requirements of §§ 763 through 766, and allow the testimony. It concluded, however, that the failure of the defendant to comply with the Practice Book requirements was not excused because the defendant had not shown good cause. It also noted that the defendant had "stipulated" during the trial that he would not call Rodriguez as a witness. The defendant duly excepted.

The defendant claims that under the circumstances he complied with § 763 in a timely fashion and that the trial court failed to consider Practice Book § 765 in rendering its decision. Practice Book § 765 requires that, "[i]f prior to or during the trial, a *party* learns of an additional witness whose identity, if known, should have been included in the *information* furnished under Secs. 763 or 764, the *party* shall *promptly notify* the other *party* or his counsel of the existence and identity of such additional witness." (Emphasis added.) The

---

[4] "The Court: Well, did you, Mr. Sanchez, did you know about this before last night?

"The Interpreter: About what?

"The Court: About the fact that Mr. Rodriguez had this information, or did you know it before?

"The Interpreter: All the time I knew about it."

defendant contends that, as soon as defense counsel knew of Rodriguez' potential testimony, counsel notified the trial court and the state and thereby complied with the applicable Practice Book provisions. We disagree.

As the state argues, Practice Book § 765 requires that, upon learning of the identity of an additional alibi witness, "the *party* shall promptly notify the other *party or his counsel* . . . of such additional witness." (Emphasis added.) It is a fundamental rule of statutory construction that where the language of a statute is clear, " 'it is assumed that the words themselves express the intent of the legislature . . . and thus there is no need to construe the statute.' " *State* v. *Smith,* 194 Conn. 213, 221, 479 A.2d 814 (1984). This rule applies with equal force to Practice Book provisions. See *State* v. *Gethers,* 193 Conn. 526, 551, 480 A.2d 435 (1984) (*Healey, J.,* dissenting). The language of Practice Book § 765 requires a "party" to disclose the identity of witnesses. Although there is no indication on the record that defense counsel knew of Rodriguez' alibi testimony prior to filing the defendant's motion to open, the defendant acknowledged that he knew as early as December 23, 1980, the day of the alleged crimes, that Rodriguez could offer alibi testimony. The defendant, a "party," therefore had a duty to disclose this information prior to trial. We agree with the trial court that the defendant did not comply with either §§ 763 or 765 of the Practice Book and failed to show "good cause" for noncompliance.[5] We conclude therefore that the trial court did not abuse its discre-

[5] The record indicates that the defendant argued that he had not called Hector Rodriguez as a witness because he did not know where Rodriguez was at the time of trial.

"The Court: Well, what I'm saying is that when he made that statement he said that he did not want to call—he didn't say he wasn't able to get a hold of him. He said he did not want to call him. And he said that after

tion conferred upon it by the Practice Book when it excluded the testimony of the undisclosed alibi witness Rodriguez.

The defendant next claims that the trial court erred in rendering its decision on the testimony because it relied on a "stipulation"[6] by the defendant and his counsel that Rodriguez would not be called as a witness during trial. He argues that the decision as to which witnesses will be called, and in what order, is generally regarded as a matter of trial tactics within the province of defense counsel. Further, he argues that the decision not to allow Rodriguez' alibi testimony denied him his right to present a defense in violation of the sixth amendment to the United States constitution, applicable to the states through the due process clause of the fourteenth amendment.

We do not disagree with the defendant's characterization of defense counsel's role with respect to trial strategy. It is established that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers* v. *Mississippi,* supra, 302; *State* v. *Boucino,* supra, 214. However, in presenting a defense, the accused, as well as the state, is required to comply with established rules of procedure and evidence designed to assure both fairness and relia-

discussing it with Mr. O'Connor [sic]. And I'm trying to determine why that Mr. Rodriguez might be helpful to him with regard to his alibi defense.

"The Interpreter: All the time I knew he could help me, but I didn't know where he was."

We note that even if the defendant had not known of Rodriguez' whereabouts until the day of the motion to open, this did not relieve the defendant of his duty to disclose under Practice Book § 765. Trial counsel could have sought a continuance pursuant to Practice Book § 981 to enable him to locate Rodriguez.

[6] The defendant does not challenge the trial court's characterization of the defendant's statement on the record as a "stipulation." We do not consider the statements of the defendant or defense counsel to be formal stipulations.

bility in the ascertainment of guilt and innocence. *Chambers* v. *Mississippi,* supra; see *State* v. *McKnight,* 191 Conn. 564, 469 A.2d 397 (1983). We recognized these principles in *State* v. *Boucino,* supra, 213, when we held that "[t]he sixth amendment 'does not confer the right to present testimony free from the legitimate demands of the adversary system.' *United States* v. *Nobles,* 422 U.S. 225, 241, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975)." We further held, however, that the "exclusion of alibi witnesses may not be justified in all cases where the defendant has failed to comply with the discovery rules. The trial court must weigh the need for exclusion against the defendant's right to present a defense. See note, 'The Preclusion Sanction—A Violation of the Constitutional Right to Present a Defense,' 81 Yale L.J. 1342, 1353–56 (1972). The decision is within the sound discretion of the trial court and will turn on the facts of the particular case. Factors which the trial court must consider include: 'whether the disclosure violation was technical or substantial, the timing of the ultimate disclosure, the reason, if any, for the violation, the degree of prejudice to the parties respectively offering and opposing the evidence, whether any resulting prejudice might be cured by a postponement and, if so, the overall desirability of a continuance.' *Taliaferro* v. *State,* [295 Md. 376, 390–91, 456 A.2d 29 (1983)]; see also *United States* v. *Myers,* 550 F.2d 1036, 1043 (5th Cir. 1977); *Commonwealth* v. *LaFrennie,* 13 Mass. App. 977, 979, 432 N.E.2d 535 (1982); *People* v. *Merritt,* 396 Mich. 67, 82–83, 238 N.W.2d 31 (1976); *State* v. *Smith,* 17 Ohio St. 3d 98, 104, 477 N.E.2d 1128 (1985)." *State* v. *Boucino,* supra, 213–14. Applying these factors in this case, we conclude that the sanction of exclusion was justified and therefore did not violate the defendant's constitutional rights.

There is no error.

In this opinion the other justices concurred.