## STATE OF CONNECTICUT *v.* ERIBERTO DELEON
### (14876)

CALLAHAN, BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued May 12—decision released July 26, 1994

*Lori Welch-Rubin,* special public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom was *James E. Thomas,* state's attorney, for the appellee (state).

KATZ, J. This appeal arises from the criminal trial of the defendant, Eriberto Deleon, that resulted in the judgment of conviction of felony murder. In a five count substitute information, the state charged the defendant with felony murder in violation of General Statutes § 53a-54c,[1] burglary in the first degree in violation of

---

[1] General Statutes § 53a-54c provides: "FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, aggravated sexual assault in the first degree,

General Statutes §§ 53a-101 (a) (2) and 53a-8 (a),[2] robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2) and 53a-8,[3] conspiracy to commit burglary in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-101 (a) (2),[4] and larceny in the third degree in violation of General Statutes

sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.''

[2] General Statutes § 53a-101 (a) provides in relevant part: ''A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone.''

General Statutes § 53a-8 provides in relevant part: ''CRIMINAL LIABILITY FOR ACTS OF ANOTHER. (a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender.''

[3] General Statutes § 53a-134 (a) provides in relevant part: ''A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . .''

See footnote 2 for the relevant text of General Statutes § 53a-8.

[4] General Statutes § 53a-48 (a) provides: ''A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy.''

See footnote 2 for the text of General Statutes § 53a-101 (a) (2).

§§ 53a-124 (a) (1) and 53a-8.[5] During his trial, the defendant pleaded guilty to all the charges except felony murder, to which he asserted the statutory affirmative defense. See General Statutes § 53a-54c.[6] Thereafter, he was found guilty of felony murder and sentenced by the trial court to an effective term of imprisonment of sixty years.

The defendant appealed from the judgment of conviction to this court pursuant to General Statutes § 51-199 (b) (3).[7] Pursuant to Practice Book § 4023 and General Statutes § 51-199 (c),[8] we transferred the defendant's appeal to the Appellate Court and thereafter granted his request to transfer his appeal from that court back to this court. On appeal, the defendant claims that the trial court: (1) violated his right to effective assistance of counsel under the federal and state constitutions by improperly denying his motion

[5] General Statutes § 53a-124 (a) (1) provides: "A person is guilty of larceny in the third degree when he commits larceny as defined in section 53a-119 and: (1) The property consists of a motor vehicle, the value of which is five thousand dollars or less."

See footnote 2 for the relevant text of General Statutes § 53a-8.

[6] See footnote 1 for the text of General Statutes § 53a-54c.

[7] General Statutes § 51-199 (b) provides in relevant part: "The following matters shall be taken directly to the supreme court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

[8] Practice Book § 4023 provides in relevant part: "The supreme court may transfer to itself a cause in the appellate court. Except for any matter brought pursuant to its original jurisdiction under the constitution, the supreme court may transfer a cause or class of causes from itself to the appellate court. The court to which a cause is transferred has jurisdiction. . . ."

General Statutes § 51-199 (c) provides: "The supreme court may transfer to itself a cause in the appellate court. Except for any matter brought pursuant to its original jurisdiction under section 2 of article sixteen of the amendments to the constitution, the supreme court may transfer a cause or class of causes from itself, including any cause or class of causes pending on July 1, 1983, to the appellate court. The court to which a cause is transferred has jurisdiction."

for a continuance and his motion to dismiss;[9] (2) violated his rights to due process and a fair trial under the federal and state constitutions by improperly denying his request to open and close the final arguments; and (3) abused its discretion by permitting the state to admit a videotape of the crime scene. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. In March, 1991, the defendant and two accomplices stole approximately $100,000 in cash from the victim's Glastonbury residence. On June 29, 1991, the defendant and three accomplices, Paul Eilerman, Joaquin Santiago and Juan Jimenez, returned to the same residence to steal additional cash. At approximately 12:30 a.m., the defendant and two of the accomplices entered the victim's residence through a front window.

At about the time the defendant discovered the victim's safe in the basement, one of the accomplices encountered the victim upstairs and a struggle ensued. During the struggle, the victim received two fatal gunshot wounds. Shortly thereafter, the defendant and the accomplices forcibly removed the victim's safe from the basement, placed it in the back of the victim's car and fled the scene.

When the police went to the victim's residence the following morning, they found the victim's body at the bottom of the basement stairs. Further, the police observed signs of a struggle throughout the residence and found bullets and bullet holes in the kitchen. Additional facts will be set forth as necessary.

I

The defendant first claims that the trial court violated his right to effective assistance of counsel under

---

[9] The defendant titled his motion to dismiss "Motion to Dismiss, Delay or Other Relief."

article first, §§ 8 and 10, of the Connecticut constitution and the sixth amendment to the United States constitution by improperly denying his motion for a continuance and his motion to dismiss.[10] We dismiss this claim as moot.

The following facts are relevant to the disposition of this claim. On October 9, 1991, the defendant filed a motion for discovery requesting the state to disclose, inter alia, any statements made by the defendant to law enforcement officers. In its response, dated November 22, 1991, the state contended that the defendant had admitted orally to ownership of a backpack, a handgun, ammunition and some cash.

On March 3, 1992, the defendant's counsel received notice that the joint trial of the defendant and his codefendant, Joaquin Santiago, would commence on March 10. Thereafter, during the afternoon of Friday, March 6, 1992, the state revealed to the defendant's counsel for the first time the existence of a statement made by the defendant to law enforcement officials.

---

[10] The sixth amendment to the United States constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

Article first, § 8, of the Connecticut constitution as amended provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security; except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by information, to a speedy, public trial by an impartial jury. . . ."

Article first, § 10, of the Connecticut constitution provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

After learning of this statement, the defendant filed with the trial court a motion for a continuance and a motion to dismiss, dated March 9, 1992, and March 10, 1992, respectively.

During argument on the motion for a continuance, the defendant's counsel asserted that, in light of the state's late disclosure, he would require additional time to evaluate his defense of the case. Specifically, the defendant's counsel argued that he required additional time before trial to decide "whether or not [the statement] changes the nature of our defense; whether or not we're going to have [the defendant] testify; and whether or not I want to move to suppress [that statement]." In denying the defendant's motion, the trial court stated that during the voir dire, the defendant's counsel could discuss the defendant's defense and whether the defendant would testify at trial. Further, the trial court specified that it perceived no prejudice in requiring the defendant to bring his motion to suppress at an appropriate time during the trial.

In the motion to dismiss, the defendant's counsel contended that the statement received on March 6 constituted "[n]ew and substantial incriminating evidence" and that he was denied access "to consult with the Defendant regarding [the statement] and otherwise prepare a defense." Specifically, the defendant's counsel argued that the professional visitation policy in effect at the Hartford correctional facility's main building, where the defendant was incarcerated pending trial, prevented him from having adequate time, prior to trial, to consult with the defendant concerning what effect the newly disclosed statement might have on his defense.[11] Ultimately, the defendant asserted that in

---

[11] The professional visitation policy in effect at the Hartford correctional facility during the relevant time period permitted defendant's counsel to meet with the defendant between 1:30 and 3:15 p.m. on weekdays and at

light of the impending trial date, the state's untimely disclosure of the defendant's statement, in conjunction with the restrictive professional visitation policy at the Hartford correctional facility, effectively denied the defendant his constitutional right to effective assistance of counsel.

The state rejoined that the defendant would receive ample opportunity to confer with his counsel during jury selection at the outset of the trial. The state further asserted that the defendant could receive additional time to confer with his counsel within the courthouse by order of the trial court. In denying the defendant's motion, the trial court concluded that "I've heard arguments that your clients have been denied effective assistance of counsel without any concrete factual scenario."

On March 30, 1992, after the completion of jury selection for the joint trial, the trial court granted the state's motion to sever the trial.[12] The state proceeded to trial first against Santiago. On May 14, 1992, after the conclusion of Santiago's trial, the trial court impaneled the defendant's jury and began his trial.

The defendant claims that the trial court's refusal to grant a continuance or dismissal on March 10, 1992, under the circumstances related above, violated his right to effective assistance of counsel under the federal and state constitutions. We reject this first claim without considering the substantive merits of the

---

no time on the weekends. After receiving the disclosure on the afternoon of Friday, March 6, 1992, the defendant's counsel attempted, without success, to arrange with officials at the facility for additional time to meet with the defendant either during weekdays or over the weekend.

[12] The state moved to sever the joint trial after the trial court had granted the defendant's motion to redact a portion of Santiago's statement given to police that might have tended to incriminate the defendant or refute the elements of the defendant's affirmative defense.

defendant's constitutional arguments,[13] however, because events following the trial court's denial of the defendant's motions rendered the issue moot.

"It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22 (1944); *Phaneuf* v. *Commissioner of Motor Vehicles,* 166 Conn. 449, 452, 352 A.2d 291 (1974); *State* v. *Johnson,* 11 Conn. App. 251, 256–57, 527 A.2d 250 (1987)." (Internal quotation marks omitted.) *State* v. *Smith,* 207 Conn. 152, 178, 540 A.2d 679 (1988). Further, "[w]e ordinarily do not address constitutional issues unless it is necessary." *Builders Service Corp.* v. *Planning & Zoning Commission,* 208 Conn. 267, 306, 545 A.2d 530 (1988).

In this case, no controversy exists for and no practical relief can follow from our review of the defendant's claim because the defendant, prior to his actual trial in May, 1992, received the additional time that he had requested from the trial court in March, 1992. In moving the court on March 10, 1992, for a dismissal, continuance, or delay of his trial, the defendant argued that he required additional time before his jury impanelment to confer with counsel, to decide whether to testify in his own defense and to afford his counsel an opportunity to decide whether to move to suppress the recently

[13] The state argues that the defendant failed to brief properly the state constitutional claim and that we therefore should not consider this claim. See *State* v. *Hamilton,* 228 Conn. 234, 246 n.10, 636 A.2d 760 (1994); *State* v. *Campbell,* 224 Conn. 168, 181 n.12, 617 A.2d 889 (1992), cert. denied, U.S. , 113 S. Ct. 2365, 124 L. Ed. 2d 271 (1993); *State* v. *Perez,* 218 Conn. 714, 723, 591 A.2d 119 (1991). Because we do not reach the merits of the defendant's substantive arguments, we need not decide whether the defendant sufficiently briefed the state constitutional claim.

disclosed statement. In essence, the defendant contended that, under the totality of the circumstances, he lacked the time and opportunity to discuss and consider with his counsel before trial the overall impact of the statement.

Following the denial of his motions, however, as a result of the severance of the trial, the defendant received more than two additional months before the commencement of his trial. Within this period, the defendant and his counsel were afforded ample time to confer, to review the statement, to consider a possible revision of trial strategy and to decide whether the defendant would testify in his own defense. Thus, the defendant proceeded to trial in May, 1992, after effectively receiving the continuance that he originally had requested from the trial court.[14] Consequently, any possible claim of ineffective assistance of counsel because of a lack of time to prepare became moot during the two month interval prior to his trial.[15] No practical relief remains for us to give the defendant, and this claim is, therefore, moot.[16]

[14] In fact, the defendant conceded at oral argument that he neither sought nor required an additional continuance at the time of his trial in May, 1992.

[15] The defendant argues that a line of sixth amendment cases, as most recently articulated in State v. Hamilton, 228 Conn. 234, 243–46, 636 A.2d 760 (1994), requires us to focus solely on the propriety of the trial court's denial of his motions on March 10, 1992, and to apply a per se reversal standard regardless of the events following that day. See, e.g., Geders v. United States, 425 U.S. 80, 91, 96 S. Ct. 1330, 47 L. Ed. 2d 592 (1976); State v. Mebane, 204 Conn. 585, 595, 529 A.2d 680 (1987), cert. denied, 484 U.S. 1046, 108 S. Ct. 784, 98 L. Ed. 2d 870 (1988). We reject this argument because it ignores an essential distinction between those cases and the present one: the defendants in those cases never received the access to counsel that they had requested. In this case, on the other hand, even if we assume, arguendo, that the trial court improperly denied the defendant's motions on March 10, 1992, the defendant, in fact, received the additional preparation time and access to his counsel prior to his trial and therefore effectively obtained full relief on his motions.

[16] In so concluding, we find no exception to permit review of this issue. See, e.g., Perry v. Perry, 222 Conn. 799, 803, 611 A.2d 400 (1992) (reviewing

## II

The defendant next claims that the trial court violated his right to due process and to a fair trial under the federal and state constitutions by permitting the state to open and close the final arguments. We disagree.

The following facts are relevant to the disposition of this claim. Before trial, the defendant originally pleaded not guilty to all the charges in the substitute information. During his trial, after the close of the state's case and immediately before he testified, the defendant changed his pleas from not guilty to guilty on all charges except felony murder. The trial court thereafter instructed the jury that it would deliberate only on the remaining charge of felony murder.

Following the close of all the evidence, the defendant moved the trial court to permit him to open and close the final arguments. The defendant argued that he was entitled to this sequence because he carried the burden of persuasion on the statutory affirmative defense. The trial court denied the defendant's motion, stating that "[t]he state still has the burden of proof, despite the fact that there's a built-in affirmative defense to [the] felony murder statute."

The defendant argues that the circumstances of his trial required the trial court to exercise its discretion to permit him to open and close the final arguments. Because we conclude that the trial court properly acted within its discretion, we reject this claim.

issue despite mootness where "capable of repetition yet evading review"), overruled on other grounds, *Bryant* v. *Bryant,* 228 Conn. 630, 637 A.2d 1111 (1994); *Barlow* v. *Lopes,* 201 Conn. 103, 105 n.2, 513 A.2d 132 (1986) (deciding merits of criminal appeal despite mootness where adverse collateral consequences exist).

" 'In order to obtain a conviction for felony murder the state must prove, beyond a reasonable doubt, all the elements of the statutorily designated underlying felony, and in addition, that a death was caused in the course of and in furtherance of that felony. General Statutes § 54a-54c.' " *State* v. *Hernandez,* 204 Conn. 377, 386–87, 528 A.2d 794 (1987), quoting *State* v. *Castro,* 196 Conn. 421, 428–29, 493 A.2d 223 (1985). Thus, the burden to prove all the elements of the crime of felony murder properly falls on the state. *State* v. *Hernandez,* supra, 386–87. If a defendant asserts the statutory affirmative defense to felony murder, however, that defendant bears the burden to prove the affirmative defense by a preponderance of the evidence. General Statutes § 53a-12 (b); *State* v. *Valeriano,* 191 Conn. 659, 663, 468 A.2d 936 (1983), cert. denied, 466 U.S. 974, 104 S. Ct. 2351, 80 L. Ed. 2d 824 (1984).

In light of the state's burden to prove every element of the charged crime beyond a reasonable doubt, practice traditionally grants the prosecution the right to open and close the final arguments to the jury. 3 W. LaFave & J. Israel, Criminal Procedure (1984) § 23.5, pp. 32–33. General Statutes § 54-88 and Practice Book § 874 (4) establish a general rule that in a criminal prosecution, the state is entitled to open and close the argument.[17] Nonetheless, a trial court "for cause" may permit divergence from this established order of argument. Practice Book § 874.

[17] General Statutes § 54-88 provides: "STATE TO OPEN AND CLOSE ARGUMENTS. In any criminal trial, the counsel for the state shall be entitled to open and close the argument."

Practice Book § 874 provides in relevant part: "[PROCEEDINGS AT TRIAL]——ORDER OF PARTIES PROCEEDING AT TRIAL

"Unless the judicial authority for cause permits otherwise . . . (4) The prosecuting authority shall be entitled to make the opening and final closing arguments.

"(5) The defendant may make a single closing argument following the opening argument of the prosecuting authority."

In our review of whether a trial court abused its discretion to find or reject sufficient "cause" in a given case, it is clear that "[t]he trial court is invested with a large discretion with regard to the arguments of counsel, and while its action is subject to review and control, we can interfere only in those cases where the discretion was clearly exceeded or abused to the manifest injury of some party." *Cascella* v. *Jay James Camera Shop, Inc.*, 147 Conn. 337, 342–43, 160 A.2d 899 (1960), overruled on other grounds, *Queen* v. *Gagliola*, 162 Conn. 164, 292 A.2d 890 (1972). The issue, therefore, is not whether we would reach the same conclusion in the exercise of our own judgment, but only whether the trial court acted reasonably. *State* v. *S & R Sanitation Services, Inc.*, 202 Conn. 300, 311–12, 521 A.2d 1017 (1987).

The defendant argues that because the state's traditional entitlement to open and close final arguments stems from the state's burden of proof in a criminal trial, such entitlement lacks merit in his case where he bore the only "meaningful" burden of persuasion. More specifically, the defendant contends that because he had pleaded guilty to all the underlying charges against him and bore the burden of proof as to the statutory affirmative defense to felony murder, the state no longer had the burden to prove the elements of felony murder beyond a reasonable doubt.[18] Further, the defendant asserts that because he bore the burden of proof on the

---

[18] Although the dissent highlights, as evidence of the state's insignificant burden of proof, that both the state and the defendant emphasized only the affirmative defense during their respective closing arguments, it is obvious that the trial court's decision not to depart from standard procedure could not be based on any concessions that were made afterward during the closing arguments themselves. Similarly, because the defendant never asked for surrebuttal, we would be hard pressed to hold that the trial court abused its discretion for failure to suggest it to counsel as an alternative accommodation, prior to any concessions that the state had met its burden of proof.

affirmative defense and the state bore no burden of proof on the elements of felony murder, due process under the federal and state constitutions necessarily required the trial court to reverse the sequence of final arguments. Because this argument misconstrues the relative burdens of proof on the defendant and the state at his trial, we reject it without addressing whether due process demands the reversal of the order of final arguments in favor of a defendant who bears the sole burden of proof at trial.[19]

The facts of this case show that the state throughout the trial continued to bear the burden of proof regarding the elements of felony murder. We note that although the defendant, by having pleaded guilty to the felonies underlying the felony murder charge, did not actively contest the factual elements of those felonies, he likewise never conceded them, and the trial court, to afford the defendant his right to due process, still was required to instruct the jury that, in order to find the defendant guilty of felony murder, it first had to find all the elements of that charge proven beyond a reasonable doubt. *State* v. *Hernandez,* supra, 204 Conn. 386–87. Thus, although the defendant may not have actively contested at trial that he, or his accomplices, had caused a death or that the decedent had died during the felonies he committed, the burden to prove these elements of the charge nonetheless rested squarely on the state. To assert that the state bore no burden of proof on an element of the crime merely because the defendant chose not to defend against that element ignores the role of the presumption of innocence in a criminal trial. See *State* v. *Allen,* 205 Conn. 370, 376–77, 533 A.2d 559 (1987). "A criminal defendant has the right to put the state to its burden and need not defend until and unless the state has presented a prima facie case." Id., 376.

---

[19] We reach neither the federal nor the state constitutional arguments in this case.

Due to the continued burden on the state to prove all the elements of felony murder beyond a reasonable doubt, no reversal or diminution of burdens occurred at the defendant's trial. Although the felony murder statute required the defendant to prove his affirmative defense by a preponderance of the evidence, the federal and state constitutions compelled the state to prove its case beyond a reasonable doubt. As a result, the trial court's identification of the continued burden of proof on the state was correct, and the trial court's decision not to vary the order of arguments was not an abuse of discretion.[20]

## III

The defendant next claims that the trial court abused its discretion by admitting into evidence a videotape of the crime scene. The defendant asserts that the admission of the videotape permitted the state to introduce "subliminal" material that was unsubstantiated by the evidence. Further, the defendant contends that the prejudicial impact of this subliminal material outweighed its probative value. We disagree.

[20] The defendant also contends that the trial court should have exercised its discretion pursuant to the procedures under Practice Book § 295. Practice Book § 295 provides in relevant part: "The counsel . . . in support of the affirmative of an issue of fact will be entitled to begin trial, and to open and close the argument. Where several issues are to be tried together, as to some of which the plaintiff, and as to others the defendant, has the affirmative, the court shall determine, in its discretion, which party shall open and close." The trial court's decision not to rely on a general civil rule rather than a specific criminal rule was not an unreasonable one.

Further, the defendant contends that the felony murder statute's use of "in furtherance of" creates a significant "interrelatedness of the elements of felony murder and the elements of its affirmative defense" such that the defendant should receive the favorable argument position. Again, we reject this argument because the trial court sits in the best position to evaluate whether the particular factual or procedural circumstances of a case require an adjustment to the order of arguments. See Practice Book § 874 (permitting trial court in criminal case to alter arguments if sufficient cause shown).

The following facts are relevant to this claim. On March 26, 1992, the trial court, *Miano, J.,* viewed the videotape prior to the commencement of the evidentiary portion of the defendant's originally scheduled trial.[21] The defendant filed a motion in limine to exclude the videotape, claiming that it was cumulative and more prejudicial than probative.[22] The defendant also argued that the state would use the videotape impermissibly to show that the videographer had to step over the victim's body in order to move around in the basement. The defendant contended that such use of the videotape would, through unsubstantiated circumstantial evidence, tend to imply that the defendant had knowledge of the victim's death and had to step over his body in furtherance of stealing money from the safe in the basement.

The state responded by disputing the defendant's characterization of the videotape as excessively prejudicial and by explaining the videotape's corroborative and independent relevance to the elements of felony murder. The state argued that the videotape of the residence's layout and the location of the victim's body tended to prove the elements of felony murder. Specifically, the state proffered that the videotape tended

---

[21] The videotape contains footage that shows, inter alia, the entire layout of the residence and the area at the foot of the basement steps where the police found the victim's body. The defendant objected only to that portion of the footage showing the victim's body and the surrounding basement area.

[22] After arguing that the state's photographs of the crime scene adequately depicted the location and position of the victim's body, the defendant's counsel stated: "I don't think there's any element of the case or any element of the charge on the subject of [the victim's] death that we're not prepared to stipulate to, Your Honor. We don't need to have this evidence in front of the jury. And its purpose to the jury is to inflame, is to reach a state of passion. . . . [L]ooking at that video—my client, Your Honor—that the jury really is not going to be persuaded by anything else in the case. It's graphic, it's a technological feat and its purpose, Your Honor, is to inflame passion."

to prove the elements of intent to commit the underlying felonies and death "in furtherance of" the underlying felonies.[23] The state also asserted that in the event that the defendant asserted the affirmative defense to felony murder, the videotape would tend to refute the assertion that the defendant did not solicit, aid, or become involved in the homicidal acts that caused the victim's death.[24] After hearing the arguments, the trial court reserved its decision on the motion for a later date.

The following day, the trial court allowed the admission of the disputed portion of the videotape after specifically considering both its potential prejudice and probative value.[25] At the same time, the trial court also rejected the defendant's argument that the videotape was cumulative evidence. Subsequent to this ruling, the trial court severed the defendant's case from that of his codefendant. Thereafter, on May 5, 1992, preliminary to his rescheduled trial, the defendant renewed

[23] The state asserted: "I think this video helps depict [the intent and 'in furtherance of' elements] for the jury in that it shows the size and the layout of the house and the proximity of the rooms to one another. The state is not claiming that [the victim] was shot in the basement. He was shot elsewhere in the house and purposely moved to the basement in the furtherance of the robbery and the burglary because that is where the safe was located . . . ."

[24] The state explained: "[B]ased on the nature of the layout of the house, Your Honor, the way the victim is found, the proximity to where the safe was located, it's highly unlikely that a person that was involved in this burglary and robbery could have walked around that house and not seen [the victim] or not know that he was being dragged down the stairs after he had been shot, the purpose being to get information out of him as to either where the money was or the combination of the safe."

[25] The trial court stated: "The injuries that are depicted do not appear of a gruesome nature in any way. And I think there is probative value. And as far as any prejudice that may be drawn from that depiction, the court finds that, based on what's depicted, there will be virtually none. As I understand prejudice, it's where the facts offered may unduly arouse the jury's emotions, hostility, or sympathy. And they know this is a death case and there's no—though one may term bullet wounds extraordinary, certainly. But, in the nature of things, there's nothing extraordinary about that body."

and clarified his objection to the admission of the videotape, and the trial court, *Fasano, J.*, thereafter denied his motion by concurring with the original determination made by Judge Miano.[26]

The defendant claims on appeal that the trial court abused its discretion in admitting the videotape into evidence because its prejudicial impact outweighed its probative value. More specifically, the defendant argues that the trial court should have excluded the videotape because the videographer's manipulation of the zoom lens and his body movements conveyed "subliminal" messages about the dimensions of the victim's basement and actions of the defendant that were not substantiated by any testimonial evidence. We reject this claim and conclude that the trial court did not abuse its discretion in finding that the videotape's probative value outweighed its potential prejudicial effect.

"This court has consistently held that photographic evidence is admissible where the photograph has a reasonable tendency to prove or disprove a material fact

[26] Although the defendant used the term "subliminal" in this argument to rephrase his original concern that the state would use the production characteristics of the videotape, i.e., camera angles, zooming effects and videographer's body movements, to permit the jury to draw an impermissible inference about the defendant's knowledge of the victim's body during the course of the robbery, the arguments by the defendant and the state before both trial courts were essentially the same.

At trial, the state argued that the second trial court, *Fasano, J.*, was bound by the decision of the first trial court, *Miano, J.* Because the two trial courts considered comparable arguments and reached the same conclusion about whether the videotape's potential prejudicial effect outweighed its probative value, however, we need not visit the issue of whether the subsequent trial court's review of the original determination was permissible under our jurisprudence concerning "the law of the case." See *Breen* v. *Phelps,* 186 Conn. 86, 97–100, 439 A.2d 1066 (1982) (trial judge may review own or other trial judge's prior determination in certain situations). We need only reiterate the general principle that " 'one judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law.' 46 Am. Jur. 2d, Judges § 46 [1969]; annot., 132 A.L.R. 14, 49 [1941]." Id., 98–99.

in issue or shed some light upon some material inquiry. . . . There is no requirement in this state that a potentially inflammatory photograph be essential to the state's case in order for it to be admissible; rather, the test for determining the admissibility of the challenged evidence is relevancy and not necessity.

"A potentially inflammatory photograph may be admitted if the court, in its discretion, determines that the probative value of the photograph outweighs the prejudicial effect it might have on the jury. . . . The determination of the trial court will not be disturbed unless the trial court has abused its discretion." (Citations omitted.) *State* v. *Williams,* 227 Conn. 101, 111, 629 A.2d 402 (1993); see also *State* v. *Willis,* 221 Conn. 518, 522, 605 A.2d 1359 (1992).

After viewing the videotape, the trial court determined that it was not extraordinarily gruesome or inflammatory. The trial court also noted that the defendant would be entitled to a jury instruction at the appropriate time to guard against the jury considering the body movements of the videographer or the other production characteristics of the videotape to infer that the defendant or his accomplices had been stepping over the victim's body during the robbery.[27] Thus, the trial court implicitly determined that potential prejudice from any "subliminal" effect on the jury could be cured or mitigated through a proper jury instruction. See *Ames* v. *Sears, Roebuck & Co.,* 8 Conn. App. 642, 652–53, 514 A.2d 352, cert. denied, 201 Conn. 809, 515 A.2d 378 (1986) (trial court's jury instruction about videotape's relevance minimizes its prejudicial effect).

---

[27] "[Defense Counsel:] "The statement was made that [the videotape] shows how the defendants were stepping over the body of [the victim] as they continued their—

"The Court: Well, again, it's not being offered for that purpose. If you want a limiting instruction I would give it. I don't think it's necessary. If the state wants to get into that they can make inquiry of the witnesses as to the cramped quarters, if that's the case."

Equally important, the trial court considered the state's claimed need for the videotape and found that it possessed probative value. See *State* v. *Williams,* supra, 227 Conn. 111 (approving trial court's finding that videotape was "most accurate, truthful and representative evidence of the crime scene"). The videotape's depiction of the victim's body in the basement was relevant to corroborate the description of the scene given by the police, to support the inference that force had been used on the victim in order to gain access to the safe in the basement and to support the conclusion that the victim's death therefore had been caused "in furtherance of" the robbery. Evaluating and weighing the appropriate factors, the trial court reached a reasonable decision, and we cannot find, as a matter of law, that any potential prejudice outweighed the videotape's probative value. Accordingly, we reject the defendant's claim.

The judgment of the trial court is affirmed.

In this opinion CALLAHAN, BORDEN and NORCOTT, Js., concurred.

BERDON, J., dissenting. I agree that it is within the discretion of the trial court to determine whether the order of closing argument should be varied. Nevertheless, under the facts of this case, I believe that the trial court abused its discretion by not allowing the defendant to open and close final argument.

Just recently, Justice Glass, writing for a unanimous court, emphasized the importance of closing argument. "Closing argument is an integral part of any criminal trial, for it is in this phase that the issues are sharpened and clarified for the jury and each party may present his theory of the case." *State* v. *Arline,* 223 Conn. 52, 63, 612 A.2d 755 (1992). Indeed, the United States Supreme Court has underscored the importance of clos-

ing argument by holding that a meaningful opportunity for it is part of the fundamental right to assistance of counsel. *Herring* v. *New York,* 422 U.S. 853, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975). "There can be no doubt that closing argument for the defense is a basic element of the adversary fact-finding process in a criminal trial." Id., 858. The court reasoned: "It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt. See *In re Winship,* [397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)]." *Herring* v. *New York,* supra, 862.

It is true, as the majority states, that while the defendant admitted that he had committed the robbery element of General Statutes § 53a-54c, the felony murder statute, he did not admit that one of his accomplices in the robbery had caused the death of the victim. There was, however, no dispute that the death of the victim had been caused during the course of the robbery committed by the defendant. After the defendant pleaded guilty during his jury trial, the only issue in dispute was whether he was entitled to an affirmative defense under § 53a-54c.[1] The burden of proof for the affirmative defense was clearly on the defendant.

---

[1] General Statutes § 53a-54c provides in relevant part: "[I]t shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and

Indeed, counsel for the defendant made this crystal clear when he admitted, in summation, the following: "Essentially, and Mr. Thomas [the prosecutor] is correct, he's made out his case. Reasonable doubt. He's made it out. And I'm not going to stand here and tell you he hasn't. The burden is on me to show you by a preponderance of evidence—and that's my standard and we'll talk about that in a moment—that Eddy Deleon did not murder because the statute has an affirmative defense in it."

Under these circumstances, I believe that the trial court abused its discretion.[2] The defendant had the burden of proof on the only viable issue the jury had to decide. The majority's attempt to dissociate themselves from the trial court's ruling by stating that the issue "is not whether we would reach the same conclusion in the exercise of our own judgment" does not make it fair or just. We do not deal with trivia in this matter—the defendant, on the felony murder count, was sentenced to a term of imprisonment of sixty years.

Accordingly, I respectfully dissent.

[2] Although the defendant did not request that he be granted the right to argue on surrebuttal, the trial court could have considered this as an alternative accommodation. Indeed, whenever the defendant bears the burden of proving an affirmative defense, reason and justice require that he be allowed surrebuttal argument limited to the affirmative defense without regard as to whether he or she has admitted to the other elements of the crime.