# STATE OF CONNECTICUT *v.* GARRY KLINGER
## (AC 16220)

O'Connell, C. J., and Schaller and Healey, Js.

Argued March 30—officially released September 1, 1998

*Alexander H. Schwartz,* for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom were *David Newman,* supervisory assistant state's attorney, and, on the brief, *Michael Dearington,* state's attorney, for the appellee (state).

*Opinion*

HEALEY, J. This appeal arises out of the trial court's denial on May 13, 1996, of the defendant's pro se motion for a modification of a condition of his probation, i.e., restitution.[1] On October 21, 1992, the defendant, pursuant to a plea bargain,[2] pleaded nolo contendere to one count of larceny in the third degree in violation of General Statutes § 53a-124 and one count of engaging in the real estate business without a license in violation of General Statutes § 20-325. On the first count, the trial court sentenced the defendant to a term of five years with execution suspended and placed him on probation

---

[1] The modification requested was titled, "Vacate restitution order." The reason for the request was set out as follows: "Restitution is a severe hardship for [the] defendant and is a constant threat to his liberty. Furthermore, evidence to hand not previously available and the same NOT allowed to be presented to the Court, *Ripley, J.,* at prior modification hearing. Would have established in fact no monies due DiGioia from defendant. Defendant requests [a] hearing."

[2] On October 21, 1992, the defendant appeared before the trial court for disposition of the charges in four separate files. At that time, he pleaded nolo contendere to the first and third counts of a short form information. The first count charged larceny in the third degree in violation of General Statutes § 53a-124 in the amount of $4500 from the victim, Joane DiGioia, and the third count charged him with engaging in the real estate business without a license in violation of General Statutes § 20-325. At the time of sentencing in 1992, the trial court remarked for the record that the defendant's exposure on all the charges pending was twenty-one years of incarceration and $22,000 in fines. The court ordered that the execution of the sentences on the first and third counts be suspended and that the defendant be placed in the custody and control of the office of adult probation for the term of five years on the first count and one year on the third count. Four other charges were nolled.

for five years. On the third count, the trial court sentenced the defendant to a term of six months and placed him on probation for one year. As a special condition of probation, the court ordered that the defendant make restitution in the amount of $4500 to Joane DiGioia, who was the victim of the larceny in the first count.

In his March 6, 1996 motion for modification, the defendant's specific request for modification was: "Vacate restitution order." He presented his motion pro se before the trial court on May 13, 1996. A proceeding ensued in which the court, the prosecutor, the defendant and the defendant's probation officer participated.[3] During his presentation to the trial court, the defendant said that the DiGioias, who were the victims of the larceny, had "lied" on their complaint about him to the Branford police and that he "did not owe [them] the sums that they claim on the information." The defendant maintained that he now had documents that would show that. At the same time, he acknowledged that in 1992, he had pleaded nolo contendere in a plea bargain that imposed the restitution condition he moved to modify. In addition, he told the court that he had been unemployed for two months and was having problems making restitution payments, that he had had only periodic employment since being found guilty in 1992 and that "he [had] been making an effort to make restitution." Further, he told the court that he was two months behind in making the restitution payments under the terms of his probation, that his car was mortgaged and that he had deeded his house to the bank in lieu of foreclosure. The defendant asked that if the court denied his motion for modification that it order a temporary stay of the restitution order because of his unemployment.

---

[3] The trial court took a recess during the proceedings to await the arrival of the defendant's probation officer.

The prosecutor told the trial court that the transcript of the defendant's October 21, 1992 disposition, pursuant to the plea bargain agreement, at which he was represented by a public defender, provided that the defendant make restitution to the two victims, the DiGioia family in the amount of $4500 and the Apuzzo family in the amount of $5000. The prosecutor also told the court that after the defendant was served with a warrant for violation of probation in 1995, while represented by a public defender, the defendant executed a promissory note on June 26, 1995, promising to make payments to the DiGioias. The trial court then indicated that it "was not about to revise the terms of the plea arrangement," but that it had a question whether there should be a temporary stay. The prosecutor then informed the court of the large amounts that remained unpaid on both the DiGioia and Apuzzo balances, information that the state had obtained from the probation officer. That information disclosed that since October, 1992, the defendant had paid the DiGioias $517.50, leaving a balance of $3989.50 on the $4500 restitution order, and had paid the Apuzzos $602.50, leaving a balance of $4397.50 on the $5000 restitution order. The defendant did not question the correctness of this statement. The trial court, having learned that the probation officer was not present, passed the matter until he appeared, at which time the court learned that the officer had not charged the defendant with violating his probation. The trial court, upon learning that the defendant had not been accused of violation of probation, said that it would be premature for the trial court to suspend any payments. It also repeated its earlier position that it would not "change the terms of the sentence to which he had agreed" at the time he was sentenced in 1992 pursuant to the plea bargain. The motion for modification was denied and this appeal followed.

The defendant claims on appeal that the trial court (1) denied his due process rights when it failed to hold

a "hearing" on his motion to modify the restitution provisions of his sentence and (2) abused its discretion "in denying his motion to modify his sentence."

Before proceeding further, we must address the threshold issue of mootness. After examining the record and the briefs of the defendant and the state on appeal, it appeared to us that the issue of whether this appeal was moot was fairly suggested. Accordingly, we ordered that the parties file supplemental briefs on that issue. The parties have done so and they have also argued that issue before us. It is significant to point out that at the time we ordered the filing of briefs on this issue we were not informed of the fact that on October 20, 1997, the defendant had been arrested and charged with violation of probation arising out of his failure to make restitution.

The defendant's position is that his appeal is not moot because he is still "in custody" under the 1992 probation order and, therefore, his appeal presents a viable and actual dispute between him and the state. He argues that the court's control over him as a probationer continues because the period of probation is tolled once a warrant is issued for the arrest of a probationer under General Statutes § 53a-31 (b).[4]

On the other hand, the state argues that the defendant's claims concern the conduct of the hearing on the motion to modify and the trial court's denial of relief under those specific circumstances. The state maintains that even if the defendant could prevail on any of his claims, no practical relief exists at this juncture. In so doing, the state argues that a court cannot retroactively modify the conditions of a sentence that no longer exist,

---

[4] General Statutes § 53a-31 (b) provides in relevant part: "Issuance of a warrant or notice to appear for violation pursuant to section 53a-32, shall interrupt the period of the sentence as of the date of such issuance until a final determination as to the violation has been made by the court. . . ."

that a hearing convened now for such a purpose would be useless and, therefore, the appeal is moot. Furthermore, the state contends that the trial court's judgment does not cause any adverse consequences for the defendant that would save the appeal from dismissal because he was not convicted of a violation of probation, but rather, merely experienced the denial of his motion to modify his probationary conditions.

" 'Mootness implicates the subject matter jurisdiction of this court.' *Sadlowski* v. *Manchester*, 206 Conn. 579, 583, 538 A.2d 1052 (1988)." *Gagnon* v. *Planning Commission*, 24 Conn. App. 413, 415, 588 A.2d 1385 (1991), aff'd, 222 Conn. 294, 608 A.2d 1181 (1992). "It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. *Reynolds* v. *Vroom*, 130 Conn. 512, 515, 36 A.2d 22 (1944); *Phaneuf* v. *Commissioner of Motor Vehicles*, 166 Conn. 449, 452, 352 A.2d 291 (1974); *State* v. *Johnson*, 11 Conn. App. 251, [256], 527 A.2d 250 (1987). . . . *State* v. *Smith*, 207 Conn. 152, 178, 540 A.2d 679 (1988)." (Internal quotation marks omitted.) *State* v. *Deleon*, 230 Conn. 351, 359, 645 A.2d 518 (1994); see *Loisel* v. *Rowe*, 233 Conn. 370, 378, 660 A.2d 323 (1995); *Shays* v. *Local Grievance Committee*, 197 Conn. 566, 571, 499 A.2d 1158 (1985); *State* v. *Deptula*, 34 Conn. App. 1, 4–5, 639 A.2d 1049 (1994).

It is apparent that as to the mootness argument, there is an actual controversy because the appeal is from the correctness of the trial court's ruling on the defendant's motion to modify. That controversy is given vitality, even though more than five years have passed since sentence was imposed on this defendant, because the issue of the warrant charging the defendant with violation of probation on October 20, 1997 (for which he

was also arrested on that date) has "interrupt[ed] the period of the sentence . . . ." General Statutes § 53a-31 (b). In short, the issuance of the warrant tolled the term of his sentence, which, had the warrant not been so issued, would have terminated his probation on October 21, 1997.[5] The defendant remained in legal custody and under the control of the department of correction. *Payne* v. *Robinson*, 207 Conn. 565, 567, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988).

As already noted, appellate courts do not decide moot questions "disconnected from the granting of actual relief or from the determination of which no practical relief can follow." *State* v. *Deleon*, supra, 230 Conn. 359. One oft-cited case put it this way in finding mootness: "So, as no practical benefit could follow from the determination of the questions sought to be raised by the appeal, it is not incumbent upon us to decide them." (Internal quotation marks omitted.) *Reynolds* v. *Vroom*, supra, 130 Conn. 515; see *Gagnon* v. *Planning Commission*, 222 Conn. 294, 299, 608 A.2d 1181 (1992); *Amalgamated Transit Union Local 1588* v. *Laidlaw Transit, Inc.*, 33 Conn. App. 1, 5–6, 632 A.2d 713 (1993). This matter of practical relief[6] or practical benefit that may be available to the defendant brings us to consider what legal remedy or redress, if any, may be available for him to satisfy this aspect of mootness. It is significant to remember that we do not have before us on this appeal the propriety and disposition of the October 20, 1997 charge of violation of probation, but rather we have the denial of a hearing on his motion for modification. We submit that there is practical relief that might

---

[5] The defendant conceded at oral argument that had the warrant of October 20, 1997, not been issued, his appeal would have been moot and he would have withdrawn this appeal.

[6] The definition of "relief" includes "legal remedy or redress." Webster's Third New International Dictionary (1986).

be afforded the defendant if it was found that he was not accorded a hearing consonant with due process. Such meaningful relief could, for example, take the form of reducing the order of restitution to the amount that he has already paid.[7]

This brings us to a consideration of the issue of whether the defendant was afforded a due process "hearing." The defendant's claim here is on both constitutional and statutory grounds.

The state argues that even if we determine that the appeal is not moot, the defendant's claim that he was not given a "hearing" nevertheless presents an unpreserved claim that should not be reviewed. In urging its nonreviewability, the state argues that his statutory claim is not reviewable under the first, second and third prongs of *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[8] and that the hearing he was accorded in the trial court was fully adequate to satisfy the requirements of procedural due process.

In addressing the issue of reviewing the defendant's claims of the court's alleged failure to hold an evidentiary hearing on his motion, we note that he claims that he specifically relied on General Statutes § 53a-39 (a) as well as his explication of how his constitutional procedural due process rights were violated by the trial

---

[7] The fact that the defendant's period of probation had only one more day to run on October 20, 1997, when he was arrested for violation of probation, does not prohibit under our analysis, the conclusion that there is still the opportunity for meaningful relief.

[8] In *State* v. *Golding*, supra, 213 Conn. 239–40, our Supreme Court held "that a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."

court. Section 53a-39 (a) is not the correct statute.[9] Despite the fact that he did not preserve these claims, he has not advanced *State* v. *Golding*, supra, 213 Conn. 233, as a basis for requesting review of his claims. The state, however, has briefed the *Golding* issue at some length, and argues that both the statutory and constitutional due process branches of this claim fail under the second, third and fourth prongs of *Golding*. Review of the defendant's statutory claim in which the defendant relies on § 53a-39 (a) also founders in the first instance on the ground that that statute is simply not applicable in this case. The defendant has failed to preserve either his constitutional or statutory claims properly, and we decline to review them.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] The statute the defendant relied on was General Statutes § 53a-39, titled, "Reduction of sentence or discharge of," whereas he should have relied on General Statutes § 53a-30, titled, "Conditions of probation and conditional discharge." Section 53a-30 (c) provides: "At any time during the period of probation or conditional discharge, after hearing and for good cause shown, the court may modify or enlarge the conditions, whether originally imposed by the court under this section or otherwise, and may extend the period, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29. The court shall cause a copy of any such order to be delivered to the defendant and to the probation officer, if any."

[10] Even if we were to review the defendant's claims under our general supervisory powers, the result reached on this appeal would be the same. See Practice Book § 60-2; see *State* v. *Sebastian*, 41 Conn. App. 530, 537, 677 A.2d 437, cert. denied, 238 Conn. 906, 679 A.2d 365 (1996). We say this even were the analysis of the constitutional claim done by employing the familiar three part balancing test of *Mathews* v. *Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).